FILED
COURT OF APPEALS
DIVISION II

2014 MAY 28 AM 8: 31

STATE OF WASHINGTON

BY_____
DEPUTY

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44827-1-II |
| Respondent, | |
| v. | |
| BOBBY RAY McKINNEY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Bobby Ray McKinney appeals from his convictions for first degree robbery, first degree burglary, conspiracy to commit second degree robbery, and conspiracy to commit first degree burglary. He argues that (1) his convictions for both conspiracy to commit second degree robbery and conspiracy to commit first degree burglary violate double jeopardy, and (2) the State did not present sufficient evidence that he was an accomplice to first degree robbery or to first degree burglary. The State concedes the first error but not the second. We accept the State's concession, affirm the convictions for first degree robbery and first degree burglary, and remand for resentencing with instructions to vacate one of the conspiracy convictions.[1]

On April 17, 2012, Gabriele Senn, a 68-year-old widow suffering from cancer, was living alone at home, watching television when two men, dressed in black and wearing masks, entered her home uninvited. One man, who was described as "oriental," pointed what looked like a gun at her. The man with the gun demanded to know where Senn kept her safe. Senn refused to tell

---

[1] A commissioner of this court initially considered McKinney's appeal as a motion on the merits under RAP 18.14 and then transferred it to a panel of judges.

him. The men rummaged around in her bedroom, where she kept her jewelry box. The man with the gun demanded Senn's car keys and credit cards. He obtained her debit card and demanded her PIN. She gave him a fake number, and he left. The other man remained, collecting jewelry and other valuables. The man with the gun returned, upset that the PIN did not work. Senn was able to go to her kitchen, where she called 911. Although she hung up before speaking with the 911 operator, the men discmovered that she had called 911 and fled the house. Police responded and found Jesse Grimes, dressed in black, in possession of a number of Senn's belongings.

Investigation led the police to interview McKinney two days later. McKinney had occasionally visited Senn at her home. McKinney told the detectives that about three weeks before the burglary and robbery, he and Grimes and Monaroes Sar discussed their need for money and the possibility of stealing some items to sell. McKinney told them that he knew of an elderly female homeowner who kept cash and valuables in her home. He also told them she had a safe. The three men went to Senn's house, where McKinney showed Grimes and Sar a way to scale Senn's fence and showed them a bedroom window that Senn always kept unlocked. The men did not commit the burglary and robbery that night. Sar called McKinney several times, asking when they could go to Senn's house, but McKinney kept putting him off. McKinney did not participate in any additional planning of the burglary and robbery, but he did not voice any objection to the plan, did not notify police and did not warn the victim. He did, however, intend to share in the proceeds of the robbery. He was not present when Grimes and Sar committed the burglary and robbery.

By amended information, the State charged McKinney with one count of first degree burglary, one count of first degree robbery, one count of conspiracy to commit first degree

2

burglary and one count of conspiracy to commit second degree robbery.[2] He waived his right to a jury. The trial court found him guilty on all four counts. As to the first degree robbery and first degree burglary counts, the court made the following pertinent findings:

> 9. The defendant was an accomplice to Grimes and [Sar]'s robbery and burglary at Senn's home. The defendant, with knowledge that it would promote and facilitate the commission of robbery and burglary, did aid in planning and committing those crimes. Specifically, the defendant did the following: he identified Senn to several others, including Grimes and [Sar], as a prime and particularly vulnerable target to be robbed in her home; he identified the valuable property believed to be in Senn's home that would make her a prime target; he led a scouting mission to Senn's home that included Grimes, Monaroes Sar, and Dennis Yoeun, where he showed them the location of her home and points of entry onto the property and into the residence. The defendant took these steps intending that one or more persons would enter Senn's home while she was present and would threaten the use of immediate force, violence, and fear of injury to Senn in order to gain her compliance in turning over her property to them. The defendant intended to receive a portion of the profits from the property stolen from Senn.

> 10. The defendant did not terminate his complicity in the effort to rob Senn and commit a burglary at her home prior to the commission of those crimes. He also did not give timely warning to law enforcement authorities and did not otherwise [make] a good faith effort to prevent the commission of the crimes.

Clerk's Papers 34-35.

First, McKinney argues that his convictions for both conspiracy to commit second degree robbery and conspiracy to commit first degree burglary violate his right against double jeopardy because there was only one plan to commit two crimes. "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes." *State v. Bobic*, 140 Wn.2d 250, 264-65, 996 P.2d

---

[2] The State also charged McKinney with second degree burglary but dismissed that charge at the end of the State's case-in-chief.

610 (2000). The State concedes that McKinney is correct and that one of his conspiracy convictions must be vacated. We accept the State's concession.

Second, McKinney argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he was an accomplice to robbery and burglary. Evidence is sufficient if, when viewed in a light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201.

For the trier of fact to find McKinney guilty of being an accomplice to robbery and burglary, the State must prove that "[w]ith knowledge that it will promote or facilitate the commission of the crime, he . . . [s]olicit[ed], command[ed], encourage[d], or request[ed] such other person to commit it; or [a]id[ed] or agree[d] to aid such other person in planning or committing it." RCW 9A.08.020(3)(a). McKinney acknowledges that there may have been sufficient evidence to show he initially shared in the planning of the robbery of Senn and the burglary of her home. However, several weeks passed before the robbery and burglary were committed, and during that interval, he did not continue his involvement in the plan or the crimes. Thus, he contends there was insufficient evidence that he was still an accomplice at the time the robbery and burglary were committed. *State v. Castro*, 32 Wn. App. 559, 564, 648 P.2d 485, *review denied*, 98 Wn.2d 1007 (1982).

But in order to be excused from accomplice liability through termination of participation, the defendant must show that he "terminat[ed] his . . . complicity prior to the commission of the crime, *and* either [gave] timely warning to the law enforcement authorities or otherwise [made] a

4

No. 44827-1-II

good faith effort to prevent the commission of the crime." RCW 9A.08.020(5)(b) (emphasis added). Taking as true McKinney's statement and testimony that he had had a change of heart about the robbery and burglary, he fails to show that he either gave timely warning to law enforcement or otherwise made a good faith effort to prevent the commission of the crimes. His "putting off" of Sar was insufficient to excuse him from criminal liability for his earlier actions in encouraging and planning the robbery and burglary. The State presented sufficient evidence to prove that McKinney was an accomplice to robbery and burglary.

We affirm the convictions for first degree robbery and first degree burglary, and remand for resentencing with instructions to vacate one of the conspiracy convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, P.J.

_____
Melnick, J.

5